JUDY FOSTER, Plaintiff and Counterdefendant-Appellant, *v.* LOUIS WILLS, Defendant-Appellee—(CITY OF GRAND TOWER, Defendant and Counterplaintiff-Appellee.)

(No. 72-220; ▮▮▮▮▮▮▮)

Fifth District—July 24, 1973.

Howard L. Hood, of Carbondale, for appellant.

Charles C. Hines, of Carbondale, (Twomey & Hines, of counsel,) for appellee.

Mr. PRESIDING JUSTICE EBERSPACHER delivered the opinion of the court:

This is an appeal from a judgment of the Circuit Court of Jackson County, Illinois, on a counterclaim, filed in an action by the plaintiff-appellant, Judy Foster, against the defendant-appellee, Louis Wills, seeking damages and injunctive relief for continued and repeated trespass by the defendant on the property of the plaintiff. The defendant, who is also the mayor of Grand Tower, Illinois, where the parties reside, asserted that the roadway in question was a public highway by virtue of its use by the public. The City of Grand Tower after intervening filed a counterclaim, alleging that the road crossing plaintiff's property was a public highway, under Ill. Rev. Stat. 1969, ch. 121, section 2—2—2, and seeking an injunction to prevent plaintiff from closing the road. By stipulation of counsel, the threshold issue of the road's character was tried first on the counterclaim. After hearing evidence, the trial court found that the road in question was a public highway under the statute, dismissed the original complaint with prejudice, and enjoined the plaintiff from obstructing the road.

The record discloses that, from approximately 1895 down to the date plaintiff acquired her real estate in Grand Tower, an unnamed road extended northward at a right angle from Market Street within the City of Grand Tower. The road passes in front of plaintiff's house and continues in a northwesterly direction until it leaves her property and curves west over property owned by the Illinois Central Railroad, and then loops back south across the property of the defendant, Wills. During the entire history of the road it was never closed and no attempt was ever made to close the road until the plaintiff, Judy Foster, attempted to close it.

The road has been used in many different ways, by many different people. Originally the road served a box factory and the Illinois Central Railroad siding, which was located at the end of the northernmost point of the road. However, after the box factory burned in 1942, the road was used for ingress and egress to a lumber company, chipping mill and bulk oil station. Customers of these various businesses and the public in general have had occasion to use the road in question. In 1971 when the plaintiff bought the property through which the road passes, she sought to restrict the flow of traffic by erecting a gate. The defendant, Wills, and a sheriff's deputy removed the gate and this lawsuit followed.

■■ The issue presented on appeal is whether or not there was sufficient evidence to support the trial court's finding that the roadway in question, which crosses the plaintiff-appellant's property, is a public

highway, as defined by Ill. Rev. Stat. (1969), ch. 121, section 2—202, which provides as follows:

"Highway—Any public way for vehicular travel which has been laid out in pursuance of any law of this State, or of the Territory of Illinois, or which has been established by dedication, or used by the public as a highway for fifteen (15) years."

■■ The tests for determining whether a road has become a public highway were recently summarized in *Walden v. Bourn*, 10 Ill.App.3d 289, 294, 296 N.E.2d 92, 95, wherein the court quoted *Van Amburg v. Reynolds*, 372 Ill. 317, 23 N.E.2d 694:

"The test in determining whether a road has become a highway by user is whether or not the public, generally, had the free and unrestricted right in common, to use the road. Where a road has been shown to have been openly and notoriously used as an open public highway in common by all the people for the statutory period, it will be considered a public highway. (*Phillips v. Leininger*, 280 Ill. 132, 117 N.E. 497; *Lee v. Dickman*, 316 Ill. 529, 147 N.E. 380.) In determining whether a strip of ground has become a public highway by user the test is not the number of persons actually using it, but the character of the use,—that is, whether or not the public, generally, had the free and unrestricted right to use the road. (*Mudge v. Wagoner*, (1926), 320 Ill. 357, 151 N.E. 276.) Where a roadway is shown to have been used and enjoyed by the public for the time required by statute, a presumption arises that such grant or use was prescriptive, and the burden is on one denying the existence of a public highway to show that the use was under some license or indulgence inconsistent with the claim of right by the public. *Lee v. Dickman, supra; Thorworth v. Scheets*, 269 Ill. 573, 110 N.E. 42; *Law v. Neola Elevator Co.*, 281 Ill. 143, 117 N.E. 435."

■■ From an examination of the testimony of all the witnesses in the case at bar, we conclude that there was sufficient evidence to support the trial court's determination that the road in question met all the criteria needed to establish that it was used as a public road for a period of time in excess of fifteen (15) years. All of the witnesses, including the plaintiff's own witnesses, testified that the road had never been closed, and that it was in continuous use by the public in general from the time the box factory was in existence until the present, a period of about 85 years. All witnesses, including the plaintiff's also testified that the use of the road had been continuous and uninterrupted, until the plaintiff had erected her gate. Witness Ralph Becker, a former plant manager of the box factory, testified that his company never asserted ownership of the

road and never objected to public use of the road. Witnesses Becker, William Kelly and Louis Wills testified that the City of Grand Tower installed street lights, water, gas and sewer lines within the road, all without obtaining permission of the property owners along the road. Mr. John Suggs, plaintiff's predecessor in title, testified that, when the City of Grand Tower installed the sewers, it was done without an easement to do so and it tore up the road so badly he could not gain ingress and egress to his house. All witnesses including those who were predecessors in title to the plaintiff testified that the property owners along the road had knowledge of the use by the public and the use was without their consent. All of the witnesses also testified that the public used the road under claim of right, in that, no one testified that they sought permission to use the road or that consent was given by the property owners to their use of the road.

■■ This recital of testimony serves to illustrate that there was evidence to support the finding of the trial court that the use of the road by the public had been open, notorious, adverse, continuous, without the landowners' permission and under a claim of right for more than fifteen years. (See *Taylor v. Wentz*, 15 Ill.2d 83, 153 N.E.2d 812.) The fact that the road in question was worked by the township authorities is a strong indication that it is a public highway. (*Walden v. Bourn, supra.*) We do not deem the testimony regarding the maintenance of the road so vague as to fall within the category set forth in *People v. Waitkus*, 30 Ill.2d 335, 196 N.E.2d 668 (1964), relied upon by the plaintiff.

■■ In applying these well established principles of law to the evidence in the case at bar we can only conclude that the trial court's findings were correct in that there was an open, adverse, continuous and uninterrupted use of the road in question by the public without permission or consent of the property owners for the statutory period. (Ill. Rev. Stat., ch. 121, § 2—202.) Where such condition exists, there is a presumption that the road has become a public highway by prescription, and the burden of proof is on the party denying the existence of the public highway to show that the use was under some license or indulgence inconsistent with a claim of right in the public if such presumption is to be overcome. *Walden v. Bourn, supra,* at 295, 296 N.E.2d at 96; *City of Greenville v. File*, 130 Ill.App.2d 878, 265 N.E.2d 518.

The cases cited by the plaintiff do not support her contentions. Plaintiff contends that the trial court failed to consider the equities of the case, in finding that the plaintiff's portion of the road in question was public, while the defendant Wills asserted his portion of the same road was private, citing *Miller Bros. Lumber Co. v. Mayfair Lumber Co.*, 4 Ill.App.3d 616, 279 N.E.2d 389. This argument, however, is without

132

merit. In *Lee v. Dickman, supra,* where the issue was whether or not a road was a public highway, the plaintiff in error attempted to introduce evidence that a private way to the defendant in error's house existed. But the court held, 316 Ill. at 532-533, that: "Whether he may have had a private way leading in the other directions has nothing to do with the question of whether the road involved here is a public road * * *." See also *Walden v. Bourn, supra.* Applying this reasoning to the case before us, the fact that the defendant asserted that his portion of the same road was private has nothing to do with the question of whether plaintiff's portion of the road is public. The issue of the public nature of the defendant's portion of the road was not before the trial court and is not now before this court.

■■ In citing *Shell Oil Co. v. Village of Hartford,* 280 F.Supp. 657 (S.D. Ill. 1968), plaintiff-appellant contends that the doctrine of adverse possession must be construed strictly in favor of the owner of the title to the land. But the factual situation in that case is completely different from the case at bar. In *Shell Oil,* the plaintiff held clear record title to the real estate in question. As in *Waitkus, supra,* the public authorities in the *Shell Oil* case did acts inconsistent with a claim of right in the public. The property in question was taxed as private property; public authorities dedicated parts thereof; the village never required Shell Oil to get permits for improvements of the road in question, but did as to other admittedly public property; and, finally, Shell Oil maintained the road. Furthermore in *Shell Oil* there was no persuasive evidence that the public use was continuous and uninterrupted, but there was considerable evidence that all use in recent years was permissive rather than adverse. None of these facts existed in the case before us; and, to the contrary, we have found that the evidence supports a conclusion that the public use was open, notorious, adverse, continuous and uninterrupted, with the knowledge of the landowners but without their consent for the statutory period.

For the reasons set forth the judgment of the circuit court is affirmed.

JONES and G. MORAN, JJ., concur.